24CA1946 Goodman v South Suburban 10-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1946
Douglas County District Court No. 24CV30595
Honorable Ben L. Leutwyler III, Judge

Mark Goodman, as an individual and as Trustee of the Mark Goodman Revocable Trust, Richard Campbell, Donna Campbell, William B. Fornia, and Matthew Troyer,

Plaintiffs-Appellees,

v.

South Suburban Park and Recreation District d/b/a South Suburban Parks and Recreation, a quasi-municipal corporation,

Defendant-Appellant.

ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Tow and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

Husch Blackwell, LLP, Tessa F. Carberry, Denver, Colorado for Plaintiffs-Appellees

Nathan Dumm & Mayer P.C., Nicholas C. Poppe, Timothy M. Walsh, Denver, Colorado, for Defendant-Appellant

¶ 1      Defendant, South Suburban Park and Recreation District (the District), appeals the trial court's order denying its motion to dismiss the complaint of plaintiffs, Mark Goodman, as an individual and as Trustee of the Mark Goodman Revocable Trust, Richard Campbell, Donna Campbell, William B. Fornia, and Matthew Troyer (collectively, the homeowners), under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2025.  We reverse and remand with directions.

## I.      Background

¶ 2      The District operates and maintains pickleball courts at the Lone Tree Recreation Center.  The homeowners — all of whom live adjacent to the pickleball courts — filed a complaint against the District asserting claims of private and public nuisance.  The homeowners allege that the pickleball courts constitute a private nuisance under the City of Lone Tree's municipal code because they are unreasonably noisy, thereby depriving the homeowners of the enjoyment of their property.  The homeowners allege that they have sustained "general damages" that include "diminution in market value and loss of entire portions of their properties."

¶ 3     The homeowners allege that the pickleball courts also constitute a public nuisance under section 25-12-103, C.R.S. 2025 (the noise abatement statute), and the municipal code because the noise levels from the courts exceed the limits set in the noise abatement statute and the city's code.

¶ 4     In their general prayer for relief, the homeowners requested (1) a declaration that the pickleball courts constitute a private and public nuisance and (2) an injunction prohibiting the District from operating the courts without enclosing the courts within a soundproof structure.

¶ 5     The District filed a C.R.C.P. 12(b)(1) motion to dismiss the complaint for lack of subject matter jurisdiction, asserting that the homeowners' claims were barred by the CGIA because the homeowners' private and public nuisance claims lie in tort or could lie in tort and no CGIA waiver related to a dangerous condition applied.  The District also noted in a footnote to the motion that the homeowners had failed to comply with the CGIA's notice requirements before filing their complaint.

¶ 6     After briefing was completed on the motion to dismiss, but before the court had ruled on the motion, the District filed a

supplement to the motion reasserting its argument that the court also lacked subject matter jurisdiction because the homeowners had failed to comply with the CGIA's notice requirements.

¶ 7 The court denied the District's motion to dismiss, finding that "[w]hile the actionable harm . . . is essentially tortious in nature," the CGIA didn't apply to either of the homeowners' claims because the homeowners sought only injunctive relief and not monetary compensation. Because it concluded that the CGIA was inapplicable, the court determined that the District's dangerous condition waiver argument was moot. Likewise, referencing the footnote in the District's motion — but not the supplement — the court found that the District's notice argument was moot because the CGIA was inapplicable.

¶ 8 The District then filed this interlocutory appeal, asserting that the court erred by concluding that the CGIA doesn't apply to bar the homeowners' claims.

II. Applicable Law and Standard of Review

¶ 9 "Questions of governmental immunity implicate the court's subject matter jurisdiction and are determined in accordance with C.R.C.P. 12(b)(1)." *Smokebrush Found. v. City of Colorado Springs*,

3

2018 CO 10, ¶ 17. A trial court's decision on a party's motion to dismiss under the CGIA is subject to interlocutory appellate review under section 24-10-108, C.R.S. 2025. Under C.R.C.P. 12(b)(1), a plaintiff has the burden of proving that the court has subject matter jurisdiction by demonstrating that governmental immunity has been waived if the defendant is a governmental entity. *Tidwell v. City & County of Denver*, 83 P.3d 75, 85 (Colo. 2003). To determine whether a plaintiff has satisfied this burden, we strictly construe the CGIA's provisions granting immunity and broadly construe its provisions waiving immunity. *Smokebrush Found.*, ¶ 22. *But see Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 33 n.12 (noting that this rule only applies when a broad construction is consistent with the CGIA's legislative intent).

¶ 10    Under the CGIA, absent a waiver of immunity, public entities are "immune from liability in all claims for injury that lie in tort or could lie in tort, regardless of whether that may be the type of action or the form of relief chosen by the claimant." § 24-10-106(1), C.R.S. 2025; *see also Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008) (noting that the CGIA "broadly encompasses all claims against a public entity arising from the

4

breach of a general duty of care").  Thus, "[e]ven if a duty is imposed upon the [s]tate pursuant to a statute or the common law, the [s]tate is liable for a breach of that duty 'only if first it is determined that sovereign immunity is waived for the activity in question.'" *Grand Junction Peace Officers' Ass'n v. City of Grand Junction*, 2024 COA 89, ¶ 56 (citation omitted).

¶ 11    In considering whether a claim lies in tort or could lie in tort for purposes of the CGIA, a court "is less concerned with what the plaintiff is arguing and more concerned with what the plaintiff *could* argue." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1005 (Colo. 2008) (emphasis added).  The form of the complaint is not determinative; instead, whether an action could lie in tort "depends on the factual basis underlying the claim."  *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 2024 CO 46, ¶ 30.

¶ 12    Thus, to determine whether a claim falls within the scope of the CGIA, courts must consider (1) the nature of the injury and (2) the relief sought.  *Id.* at ¶ 31.  "We assess the nature of the injury and the relief requested on a case-by-case basis through a close examination of the pleadings and undisputed evidence." *Robinson*, 179 P.3d at 1004.

¶ 13     The CGIA's definition of an "injury" includes "damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." § 24-10-103(2), C.R.S. 2025. When a plaintiff's alleged property damage or loss arises either out of tortious conduct or the breach of a duty recognized by tort law, and when the plaintiff seeks compensatory relief, "the claim likely lies in tort or could lie in tort for purposes of the CGIA." *Robinson*, 179 P.3d at 1003.

¶ 14     The nature of a plaintiff's requested relief isn't dispositive of whether a claim lies in tort. *Elder v. Williams*, 2020 CO 88, ¶ 23. But it may inform our understanding of the nature of the injury and the duty allegedly breached, especially if the plaintiff's claim arises from a statute without origins in common law. *Id.*

¶ 15     Because the material facts are undisputed, and the issue is one of statutory construction, we review the trial court's jurisdictional ruling de novo. *See Smokebrush Found.*, ¶ 17.

### III.   Analysis

¶ 16     As a preliminary matter, both the homeowners and the District seemingly rely on *Board of County Commissioners v.*

*Colorado Department of Public Health & Environment*, 2021 CO 43 (*La Plata*) — the only published Colorado case to examine a public nuisance claim implicating the CGIA — as determinative of when a public nuisance claim lies in tort or could lie in tort.

¶ 17    In *La Plata*, the supreme court considered whether the Colorado Department of Public Health and Environment's (CDPHE) statutory enforcement action against a county was barred by the CGIA. *Id.* at ¶ 2. In that case, La Plata County argued that the CGIA barred the CDPHE's efforts to bring an enforcement action against the county for alleged violations of the Solid Wastes Disposal Sites and Enforcement Act, sections 30-20-100.5 to -122, C.R.S. 2020. *Id.* at ¶ 1.

¶ 18    Ultimately, the supreme court concluded that the CDPHE's enforcement action against the county wasn't barred by the CGIA for three reasons: (1) the CDPHE was acting solely in its regulatory capacity to protect a public right and thus wasn't asserting a claim for an "injury" as that term is defined under the CGIA; (2) the CDPHE's enforcement action didn't or couldn't lie in tort because the county didn't breach any duty it owed to the CDPHE under tort law; and (3) the nature of the relief the CDPHE sought was a

7

regulatory proceeding to force the county to comply with its statutory obligations. *Id.* at ¶¶ 41, 43-44.

¶ 19   The District argues that *La Plata* "established three factors to consider when evaluating whether a public nuisance claim lies in tort and thus is subject to the CGIA," one of which is "whether the duty and related cause of action arose out of tort law or whether the cause of action originated solely with a legislative enactment." And the District argues that under these so-called *La Plata* factors, the homeowners' public nuisance claim lies in tort.

¶ 20   Conversely, the homeowners argue that, under the supreme court's analysis in *La Plata*, their public nuisance claim doesn't lie in tort because "like the plaintiffs in *La Plata*, [the homeowners] seek only to protect the public at large and to prevent future potential injury to the public." The homeowners also argue that their public nuisance claim derives "explicitly" from the noise abatement statute and the municipal code, which they assert is "much like the statutory dut[y] discussed in *La Plata*" that the supreme court held wasn't barred by the CGIA.

¶ 21   To the extent the parties suggest *La Plata* announced a new test to determine whether a public nuisance claim is subject to the

CGIA, we reject their suggestion. The supreme court didn't create a new test in *La Plata* — it applied existing legal principles for determining whether a claim lies in tort or could lie in tort. *Id.* at ¶¶ 37-40 (applying *Elder* and *Robinson*).

¶ 22    With those existing principles in mind, we turn to our consideration of whether the homeowners' claims lie in tort or could lie in tort for purposes of the CGIA.

## A.    Private Nuisance

¶ 23    The District argues that the trial court erred by "relying solely on the homeowners' chosen remedy to determine application of the CGIA." We agree.

¶ 24    A claim for private nuisance is a tort "predicated upon a substantial invasion of an individual's interest in the use and enjoyment of [their] property." *Hoery v. United States*, 64 P.3d 214, 218 (Colo. 2003); *see also* Restatement (Second) of Torts § 822 cmt. a (A.L.I. 1979) ("Private nuisance is solely a matter of tort liability.").

¶ 25    Here, the homeowners allege that the noise from the pickleball courts unreasonably infringes on their ability to use and enjoy their private properties by preventing them from using "entire portions"

9

of their properties and diminishing the value of their respective properties. Thus, the homeowners' bare factual allegations demonstrate that their private nuisance claim lies in tort. *See Burlingame Ranch*, ¶ 30; *Hoery*, 64 P.3d at 218.

¶ 26    This is so even considering that the homeowners' complaint doesn't outright request monetary compensation for their alleged damages and instead purports to only seek declaratory and injunctive relief. *See Elder*, ¶ 23; *see also City of Colorado Springs v. Conners*, 993 P.2d 1167, 1176 (Colo. 2000) (noting that some torts, including nuisance, may involve equitable forms of relief); *Brown Grp. Retail, Inc.*, 182 P.3d at 688 (holding that a claim for declaratory relief based on injuries that lie in tort or could lie in tort must meet the requirements of the CGIA); *see also Allison v. Smith*, 695 P.2d 791, 793 (Colo. App. 1984) (affirming on appeal the trial court's award of damages and injunctive relief for the plaintiff's private nuisance claim); *Seigle v. Bromley*, 124 P. 191, 193-94 (Colo. App. 1912) (recognizing both damages and injunctions as forms of relief available in an action for private nuisance).

¶ 27    Moreover, the homeowners don't contest that their private nuisance claim lies in tort. Indeed, in their answer brief, they state

that they "do not argue that their private nuisance does not or could not lie in tort." Instead, they assert that a dangerous condition waiver of immunity applies. Likewise, in their response to the District's motion to dismiss, the homeowners didn't argue that their private nuisance claim doesn't lie in tort; rather they argued that the "physical condition and use [of the pickleball courts] are dangerous conditions not subject to the restrictions of the CGIA." The homeowners haven't identified, nor have we found, any legal authority supporting the notion that a private nuisance claim *doesn't* (or couldn't) lie in tort. *See, e.g.*, *Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 5 (recognizing private nuisance as a tort claim as defined in *Hoery*).

¶ 28 Thus, we conclude that the homeowners' private nuisance claim clearly lies in tort despite their request for declaratory and injunctive relief. Accordingly, we reverse the trial court's determination that the homeowners' private nuisance claim doesn't lie in tort and therefore isn't subject to the CGIA.

### B. Public Nuisance

¶ 29 The District also contends that the homeowners' public nuisance claim lies in tort or could lie in tort. We agree.

### 1.  Common Law Public Nuisance Legal Principles

¶ 30    A common law public nuisance involves the invasion of rights common to members of the public, *Hoery*, 64 P.3d at 218 n.5, resulting from actions or inactions "that injuriously affect[] the safety, health[,] or morals of the public," or that cause "some substantial annoyance, inconvenience, or injury to the public." *Docheff v. City of Broomfield*, 623 P.2d 69, 71 (Colo. App. 1980) (citation omitted); *see also* Restatement (Second) of Torts § 821B(1) ("A public nuisance is an unreasonable interference with a right common to the general public.").

¶ 31    The general public's right to be free from loud and disturbing noises is recognized under the common law.  *See* Restatement (Second) of Torts § 821B.  To succeed in an action that seeks to enjoin a public nuisance, a plaintiff — rather than merely showing that they have suffered the same harm affecting the general public, but to a greater degree — must prove that they have experienced harm that is of a different kind than that suffered by the public as a result of the violation of the common right at issue.  *See* Restatement (Second) of Torts § 821C cmt. b.

¶ 32     And while the common law tort of public nuisance still exists, *see* Restatement (Second) of Torts § 821B cmt. b, our supreme court has held that public nuisance claims are not necessarily torts within the meaning of the CGIA.  *La Plata*, ¶ 46.

¶ 33     With these principles in mind, we turn to whether the homeowners' public nuisance claim lies in tort or could lie in tort.

2.     The Homeowners' Public Nuisance Claim Lies in Tort

¶ 34     Under the circumstances presented here, we conclude that the homeowners' claim for public nuisance lies in tort for two reasons.[1]

¶ 35     First, consistent with the elements necessary to establish a common law public nuisance tort claim, the homeowners allege they are experiencing harms from the pickleball court noise that are different in kind from those experienced by the public.  The homeowners' complaint also alleges in part that the pickleball courts constitute a nuisance under common law.  They further say

---

[1] The homeowners' counsel argued for the first time during oral argument that a public nuisance action filed under section 25-12-104, C.R.S. 2025, doesn't lie in tort because that section delegates to the public the state's inherent authority to redress public nuisances that violate the noise abatement statute.  We don't consider arguments that are raised for the first time during oral argument.  *McGihon v. Cave*, 2016 COA 78, ¶ 10 n.1.

that the purpose of their lawsuit is to "protect the public's right to live free of unlawful nuisances [and] to prevent injury to the public at large" resulting from the noise from the pickleball courts, which they assert is "harmful to the public's health, safety, and welfare." In addition to these public harms, the homeowners assert that they have each suffered "unique" injuries.

¶ 36 For example, the homeowners assert that they have each experienced "stress" due to their proximity to the pickleball courts and that the noise has devalued their property. And, regarding the individual plaintiffs, the complaint alleges the following harms:

- The Campbells, who purchased their home for the sunset views from their patio, can't use their outdoor space due to the pickleball court noise and have incurred costs in attempting to remediate the noise by installing a fountain and speakers on their deck.

- Troyer can't use his back porch due to the noise.

- Fornia — who also bought his property to enjoy the views from his deck and patio — can't use those outdoor spaces due to the noise. The noise also interferes with his ability to work at home.

- Goodman can't use the outdoor spaces of his home to enjoy its scenic views, despite paying a premium price for his property after being assured that the open space to the west of his home would not be developed.

These alleged losses, if inflicted by a private person, would most certainly sound in tort. *See Hoery*, 64 P.3d at 218.

¶ 37 Second, the requested relief to redress the homeowners' public nuisance claim — as pleaded and as potentially available based on the substance of the homeowners' allegations — lies or could lie in tort.

¶ 38 In *Conners*, our supreme court noted that a claim for nuisance, which is usually a tort, may support a request for injunctive relief. 993 P.2d at 1176; *see Seigle*, 124 P. at 193-94. Similarly, in *Brown Group Retail, Inc.*, the supreme court held that the CGIA's provisions apply to requests for declaratory relief based on claims for injuries that lie in tort or could lie in tort. 182 P.3d at 688. And, as pleaded, the homeowners request injunctive relief, which is a form of relief available to redress a common law public nuisance that also causes special harm to individual plaintiffs. *See* Restatement (Second) of Torts § 821C cmt. b.

¶ 39    Likewise, the homeowners' public nuisance claim *could* support an award of monetary damages regardless of whether the homeowners are explicitly asking for such an award.  We thus aren't persuaded by the homeowners' argument that their public nuisance claim "does not and cannot lie in tort" because they brought it in part under the noise abatement statute, which doesn't authorize recovery for damages and instead only authorizes equitable relief.  *See* § 25-12-104, C.R.S. 2025 (authorizing any resident of the state to "maintain an action in equity . . . to abate and prevent . . . and to perpetually enjoin" a nuisance as defined under the noise abatement statute).

¶ 40    While the homeowners only specifically allege that the market value of their homes has diminished with respect to their private nuisance claim, the facts supporting that claim mirror the facts supporting their public nuisance claim.  Thus, the homeowners could have alleged — and indeed do allege — that their property values are diminished by the noise from the pickleball courts in support of their public nuisance claim.  And diminution in market value is a measure of damages for injuries to real property.  *See*

*Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 827 (Colo. 2008).

¶ 41    Therefore we conclude that the homeowners' public nuisance claim is subject to the CGIA because it lies in tort or could lie in tort, as evidenced by the nature of the homeowners' claimed injuries and the substance of their requested relief. Accordingly, we reverse the trial court's order concluding otherwise.

## C.    Notice and Waiver

¶ 42    As noted, the court found the parties' notice and waiver arguments presented in the motion to dismiss briefing were moot because it found that the CGIA didn't apply. Because we have concluded that the homeowners' nuisance claims are each subject to the CGIA, we remand the case to the trial court to determine (1) whether the homeowners complied with the CGIA's notice requirements under section 24-10-109(1), C.R.S. 2025, and (2) whether the District waived its immunity under section 24-10-106(1). The trial court may hold a hearing as necessary, consistent with *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), to accept and weigh

evidence to decide these issues.  *See Medina v. State*, 35 P.3d 443, 463 (Colo. 2001).

## IV.  Disposition

¶ 43      The trial court's order denying the District's motion to dismiss is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE TOW and JUDGE LUM concur.